UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEELINE E. SPEARS,

                      Plaintiff,

v.                                              Case No. 20-cv-894-pp

LT. JOHN TYLER,
and JOHN DOES, *Milwaukee County
Sheriff's Officer Deputies #1-5*,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE MOTION TO APPOINT COUNSEL (DKT. NO. 11) AND SCREENING COMPLAINT**

---

      Jeeline E. Spears, an inmate at the New Lisbon Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and his motion to appoint counsel, dkt. no. 11, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 15, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $13.11. Dkt. No. 5. The court received that fee on July 6, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on July 26, 2018, he was transported from the Milwaukee Secure Detention Facility to the Milwaukee County Jail. Dkt. No. 1 at 2. When he arrived at the jail, a mental health staff member allegedly informed the plaintiff that he would be placed on "suicide watch" status for the first twelve hours he was at the jail, based on the jail's policy that requires inmates to be placed on suicide watch when they arrive from another facility and have not been off that status for at least thirty days. Id. at 3. The plaintiff

3

alleges that he told the staff member that he was not going on suicide watch and that he was not suicidal. Id.

The plaintiff states that when he returned to the booking area, the mental health staff told Lt. Tyler and John Doe deputies #1-5 what the plaintiff had said. Id. He says that defendant Deputy John Doe #1 ordered him to sit in the "blue chair" and the plaintiff immediately complied. Id. Doe #1 and the plaintiff allegedly had a "relaxed and friendly" conversation about the jail's suicide watch policy and the plaintiff told Doe #1 that he did not feel suicidal and did not believe he needed to be placed on suicide watch. Id. The plaintiff alleges that, without warning or provocation, Lt. Tyler approached them and stated aggressively, "Fuck that! He's going on suicide watch!" Id. The plaintiff says that Tyler then grabbed the plaintiff under his armpits, stood him up and pushed him towards the wall. Id. at 4. When the plaintiff reached the wall, Tyler allegedly slammed the plaintiff's head and body into the wall, causing him excruciating pain and causing him to fear for his safety. Id.

The plaintiff alleges that while Tyler held the plaintiff's body against the wall, Does #1-5 fastened a "rip belt" around his waist and placed handcuffs on him. Id. The defendants escorted the plaintiff to the fingerprint/photo area where the plaintiff says he resisted having his fingerprints taken. Id. When he resisted, Does #2 and #3 allegedly bent his hands and fingers which caused "excruciating pain." Id. He says that his head was "grabbed forcefully" by unknown defendants to take his booking photo. Id. The plaintiff alleges that the defendants eventually took him to a cell. Id. at 4-5. Upon entry into the

4

cell, an unknown defendant allegedly slammed the plaintiff to the floor without provocation. Id. at 5. The plaintiff alleges that while he was on the floor, the defendants struck him with closed fists, knees and elbows for about five excruciating minutes. Id.

The plaintiff states that the beating caused him severe harm in form of bruises, muscle pain, joint pain in his knees and extreme pain that radiated from his head to his feet and lasted for about two weeks. Id. He says that he was denied medical attention for over three hours after the beating, and that when he was examined by an unknown nurse, she took photos of the injuries to his hands but refused to take photos of his body. Id.

The plaintiff claims that the defendants used excessive force against him in violation of his constitutional rights. Id. at 1, 6. He seeks compensatory and punitive damages. Id.

    C.    Analysis

It is not clear whether the plaintiff was a convicted prisoner or a pretrial detainee on the date of the alleged excessive force incident, July 26, 2018. The Eighth Amendment prohibits the use of excessive force on convicted prisoners. When assessing a claim for excessive force, the court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (state prisoner's allegations that officer punched, kicked, kneed, choked and body slammed him maliciously and sadistically and without provocation, leaving him with a

5

bruised heel, back pain, and other injuries that required medical treatment stated an Eighth Amendment excessive force claim). The Fourteenth Amendment applies to pre-conviction detainees and the standard is solely objective. Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97.

Under either standard, the plaintiff's allegations state a claim that the defendants used excessive force against him on July 26, 2018. The court will allow the plaintiff to proceed against Tyler and Does #1-5.

Once the defendants have responded to the plaintiff's complaint and after the court issues a scheduling order, the plaintiff will need to learn the real names of the John Doe defendants by asking for that information from the attorney who represents defendant Tyler during what is known as the "discovery" process. If the plaintiff is unable to identify the Doe defendants on his own during the discovery process, he may notify the court at that time.

### III.     Motion to Appoint Counsel (Dkt. No. 11)

The plaintiff also filed a motion asking the court to recruit counsel for him. Dkt. No. 11. In a civil case the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but

6

there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). In his motion, the plaintiff provides several letters from lawyers declining to represent him, thus meeting the first prong. Dkt. No. 6-1.

When considering the second prong the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other

7

characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett 930 F.3d at 871.

The plaintiff says that he has written to numerous law firms but has had no luck getting someone to represent him. Dkt. No. 11. He says that all the people he's contacted either were too busy or just didn't respond. Id. He lists five lawyers or firms that he contacted. Id. He asks whether the court would help him and says he would not be asking if he didn't need it. Id. He says he has about nine more attorneys he could contact, but says that if the court would help him, it would be appreciated. Id.

The court is satisfied that the plaintiff has tried—unsuccessfully—to find counsel on his own. But the court will not appoint counsel to represent the plaintiff at this early stage. The plaintiff writes well, and clearly. The court had no trouble understanding the allegations in his complaint. The next step in the process will be for the named defendant, Lt. Tyler, to respond to the plaintiff's complaint. Once that happens, the court will issue an order giving the parties deadlines to exchange information about the case. At that point, the plaintiff will be able to ask Tyler's lawyer for information and documents—both about the identities of the Doe defendants and about his allegations. The court feels comfortable, given the plaintiff's written submissions so far, that he will be able to do that. Conducting "discovery"—asking for information from the defendants—doesn't require legal research or case citations. If, as the case

8

progresses, it appears that it is becoming too complicated for the plaintiff to handle himself, the plaintiff can renew his motion for the appointment of counsel.

### III.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 11.

Under an informal service agreement between Milwaukee County and this court, a copy of the complaint and this order have been electronically transmitted to Milwaukee County for service on defendant Lt. John Tyler. Under the informal service agreement, the court **ORDERS** defendant Tyler to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$336.89** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Stephen C. Dries for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 22nd day of October, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**