UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEELINE SPEARS,

        Plaintiff,

  v.

Case No. 20-cv-894-pp

KEVIN TYLER, MARKEESE YOUNG,
JEFF ANDRYKOWSKI, JOHN DINGMAN,
DANIEL CARROLL, CYRUS PAYNE,
BRANDON MCDONALD, and KEVIN UTSBY,

        Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL (DKT. NOS. 35, 38, 39, 50), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 40) AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 45)**

---

      Plaintiff Jeeline E. Spears, a person incarcerated in the Wisconsin prison system who is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants used excessive force against him on July 26, 2018, when he was confined at the Milwaukee County Jail. Dkt. No. 1 at 3-6. The plaintiff subsequently filed an amended complaint identifying the former John Doe defendants. Dkt. No. 31. The plaintiff since has filed four motions to compel discovery (dkt. nos. 35, 38, 39, 50), a motion to appoint counsel (dkt. no. 40) and a motion for default judgment (dkt no. 45). This order resolves those motions.

1

## I. Motions to Compel Discovery (Dkt. Nos. 35, 38, 39, 50)

### A. Motion to Compel Received April 12, 2021 (Dkt. No. 35)

In a motion to compel received by the court on April 12, 2021, the plaintiff asserts that he asked the defendants for booking room video footage and 4D cell block video footage; he says that he has "tried multiple times" to get these items without any response. Dkt. No. 35 at 4. In response, the defendants state that they have provided the plaintiff with the 4D cell block footage but that they do not have booking video footage. Dkt. No. 36 at 1-2. On April 30, 2021, defense counsel sent the plaintiff a letter telling him this, stating "[t]here is no video footage of the booking room as you requested." Dkt. No. 37-1. Because the defendants have provided the plaintiff with the existing 4D cell block video footage and because there is no booking room video footage, the court will deny the April 12, 2021 motion to compel.

### B. Motion to Compel Received May 14, 2021 (Dkt. No. 38)

On May 14, 2021, the court received from the plaintiff a document titled Motion to Compel in which he seeks relief under Federal Rule of Civil Procedure 37(e)(1) because he believes the Milwaukee County Jail did not take reasonable steps to preserve the booking room video recording of the alleged incident. Dkt. No. 38 at 2. The plaintiff states that the defendants are withholding or tampering with evidence because they told him they have only the video footage from the 4D cell block but not video footage from the booking room where the alleged beating took place. Id. at 1. According to the plaintiff, the Milwaukee County Jail's policies reflect awareness of a duty to preserve

2

video footage and the recording cannot be restored or replaced. Id. He asks the court to conclude that the jail did not take reasonable steps to preserve the recording and asks the court to find that he has been prejudiced. Id. at 2.

The defendants contend that the court should deny the motion. Dkt. No. 46 at 2. Milwaukee County's policy is to maintain video in cases in which jail employees have had to use force when dealing with an incarcerated person, which is why the county maintained a copy of the video of the plaintiff in cell block 4D on July 26, 2018. Id.; see also Declaration of Milwaukee County Jail Commander Aaron Dobson, Dkt. No. 47 at ¶¶7-11. The defendants state that because it was determined that there was no use of force while the plaintiff was in the booking area of the jail, this video was not retained. Dkt. No. 46 at 2; Dkt. No. 47 at ¶¶7-11. They state that by the time Milwaukee County was put on notice in late 2019 that the plaintiff was claiming force was used against him in the booking area of the jail on July 26, 2018, the video no longer was available. Dkt. No. 46 at 2; Dkt. No. 47 at ¶¶7-17.

Federal Rule of Civil Procedure 37(e) states in relevant part:

> (e) FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice[.]

Fed. R. Civ. P. 37(e)(1).

The defendants have submitted the following explanation for the jail's failure to preserve the booking room video: the jail's surveillance cameras

3

continuously record in the booking area of jail until the camera's memory becomes full; the video footage from the jail cameras is maintained and stored for about ninety days at which time the cameras record over the oldest video footage; under the policy in effect in July 2018, staff would download and preserve video from cameras in the jail only in certain circumstances, including when there was an incident involving jail personnel using force on an inmate; a copy of the video from housing unit 4D was retained and preserved "because there was a use of force on a combative inmate, Jeeline Spears, in housing unit 4D on July 26, 2018;" staff did not retain a copy of the video from the booking area of the jail "because it was determined that there was no use of force" on the plaintiff in the booking area on July 26, 2018. Dkt. No. 47 at ¶¶5-7, 10, 11.

In the amended complaint, the plaintiff alleged that the defendants used excessive force against him in the jail's booking area and that the force continued after he was escorted to his cell in cell block 4D. Dkt. No. 31 at ¶¶18-31. Based on the defendants' assertion that video evidence from cell block 4D was preserved under the jail policy because of the use of force on the plaintiff, the video of the plaintiff's interactions with some of the same defendants in the booking area right before he was escorted to cell block 4D arguably also should have been preserved. See Freidig v. Target Corp, 329 F.R.D. 199 (W.D. Wis. 2018) (video footage of area in which store patron slipped and fell, during the ten to fifteen minutes prior to fall, was relevant to potential litigation, triggering store's duty to preserve footage); see also Lewis v. McLean, 864 F.3d 556, 565 (7th Cir. 2017) (when prison chose to preserve

4

video of cell extraction, it also should have preserved the recording of the two hours leading up to the cell extraction).

While the defendants should have preserved the booking room video, the court cannot determine whether the plaintiff has been prejudiced by the failure to do so. As an initial matter, the plaintiff says he has his booking room photograph which shows a black eye he received from defendant Tyler in the booking room. Dkt. No. 31 at ¶36 (amended complaint); Dkt. No. 48-3 (inmate grievance). Moreover, as the defendants point out, the defendants have not filed a summary judgment motion and the plaintiff has not identified what measures he wants this court to take to cure any alleged prejudice. Dkt. No. 46 at 5. If the defendants file a motion for summary judgment, the plaintiff may request relief under Rule 37(e)(1), but only if he believes he has been prejudiced by not having the booking room video. In response to any motion for summary judgment, the plaintiff may file a declaration telling his version of the use of force incident and may provide the court with the photograph that shows his black eye from the booking room. At this time, the court will not grant the plaintiff any relief regarding the defendants' failure to preserve the booking room video and will deny the motion without prejudice.

C.   Motion to Compel Received on May 14, 2021 (Dkt. No. 39)

On the same day it received the prior motion, the court received from the plaintiff a document which he described as "another motion concerning the flash-drive" he was sent by the defendants on May 3, 2021. Dkt. No. 39. This motion asserts that institution staff told him there was nothing on the flash

drive and asks the court to order the defendants to provide him a CD of the 4D cell block video. Id. The plaintiff believes the defendants are "playing games." Id. The defendants respond that they have sent the plaintiff a CD in response to his motion. Dkt. No. 41 at 1. In addition, the defendants filed the declaration of a legal assistant who swears that the flash drive the defendants mailed the plaintiff contained the video footage he requested. Dkt. No. 42 at 1-2. The court has no basis to conclude that the defendants are "playing games" with the plaintiff and the defendants have mailed him the CD he requested. The court will deny this motion to compel.

> D. Motion to Compel Received on August 4, 2021 (Dkt. No. 50)

On August 4, 2021, the court received from the plaintiff a motion indicating that he had not received responses to interrogatories he'd sent the defendants on March 11, 2021. Dkt. No. 50. The defendants responded that on August 25, 2021—the date they filed their response with the court—they sent copies of interrogatory responses to the plaintiff. Dkt. No. 53 at 1. They explained that they were still in the process of obtaining the signature pages from all the defendants, explaining that their response had been slowed by complications due to the COVID-19 pandemic, the fact that two defendants no longer work for the county and the fact that one of the defendants had been involved in a hit-and-run accident. Id. at 1-2. They stated that they would send the signature pages once they received them. Id. at 1. Because the defendants have provided the plaintiff with the responses to his interrogatories, the court will deny this motion to compel.

6

**II.     Motion to Appoint Counsel (Dkt. No. 40)**

In his motion asking the court to appoint counsel to represent him, the plaintiff states that this is the first time he has done any litigation of any kind and that it is very hard. Dkt. No. 40 at 1. He says that he has no legal education and explains that the inmate who had been helping him was going home and that he was going to be on his own. Id. at 1-2. The plaintiff asserts that he had written to the court previously, showing that he had written to five different law firms without finding anyone to represent him; he asserts that since then, he'd written four more law firms and still had no luck. Id. at 2. He asks the court to appoint him a lawyer to help him with "this very hard civil law suit." Id. He notes that in October 2020, the court had denied his first request to appoint him counsel due to his "being smart, so to say," but he explains that he had help up to this point. Id. He says that the discovery is hard and is taking more time than "what we both anticipated." Id.

In a civil case the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019) (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019).

When considering the second prong the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

8

Case 2:20-cv-00894-PP   Filed 10/18/21   Page 8 of 11   Document 59

The plaintiff has made a reasonable attempt to find a lawyer on his own so he has met the first requirement for appointment of counsel. But the plaintiff's claims are straightforward claims of excessive force. His motions to date have been clear and understandable. The court understands that as of May 2021, the plaintiff lost the person who had been helping him. But since then, he has filed a motion for default judgment and another motion to compel, both of which were clear and understandable. The plaintiff has good handwriting (which the court appreciates—many people don't). His most recent motions—the ones he filed after the inmate who'd been helping him had gone home—cite rules and explain in clear, direct language what he wants and why. He has included the information the court needs to rule on the motion. There is no indication that the plaintiff has difficulty reading or writing and for someone who has no prior litigation experience, the plaintiff's motions are remarkably easy to understand and follow. These filings demonstrate that the plaintiff can continue to represent himself at this stage in the litigation. The next step in the process is for the parties to file motions for summary judgment (if they choose to do so). The deadline for filing such motions is November 12, 2021. If the defendants file a motion for summary judgment, they will include in that motion the rules the plaintiff will need to be familiar with to respond. If, at some point in the future, the litigation becomes too complex for the plaintiff to handle himself, he may renew his motion. The court will deny the motion without prejudice.

### III. Plaintiff's Motion for Default Judgment (Dkt. No. 45)

The plaintiff moved for default judgment based on the defendants' failure to timely respond to his interrogatories. Dtk. No. 45. Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Only after the clerk has entered default may a party may ask the court to award default judgment.

The purpose of default judgment is not to impose a punishment or sanction on a party who fails to comply with discovery requests—that is what Rule 37 is for. Default judgment is appropriate only when the defendant does not answer or respond to the lawsuit. The defendants have not failed to plead or otherwise defend against the lawsuit. They have answered the second amended complaint. Dkt. No. 33.

Even if default judgment were an appropriate sanction for failure to comply with discovery requests, the court would not grant it. The defendants have provided the plaintiff with the responses to his interrogatories, along with an explanation as to why some of them were late. Specifically, they explained that two of the defendants no longer work for Milwaukee County, there were issues with COVID and one of the defendants was involved in a car accident which complicated getting the answers to the plaintiff. Dkt. No. 53 at 1-2. The court will deny the plaintiff's motion for default judgment.

10

Case 2:20-cv-00894-PP   Filed 10/18/21   Page 10 of 11   Document 59

## IV. Conclusion

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 35.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to compel. Dkt. No. 38.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 39.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 40.

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 45.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 50.

Dated in Milwaukee, Wisconsin this 18th day of October, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**